IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE | : CHAPTER 11 |
| | : |
| WORLD IMPORTS, LTD., INC. | : BANKRUPTCY NO. 13-15929 |
| WORLD IMPORTS CHICAGO, LLC | : BANKRUPTCY NO. 13-15933 |
| WORLD IMPORTS SOUTH, LLC | : BANKRUPTCY NO. 13-15934 |
| 11000 LLC | : BANKRUPTCY NO. 13-15935 |
| DEBTORS | : |

| | |
|---|---|
| WORLD IMPORTS, LTD., INC | : |
| WORLD IMPORTS CHICAGO, LLC | : |
| WORLD IMPORTS SOUTH, LLC | : |
| 11000 LLC | : |
| PLAINTIFFS | : |
| VS. | : |
| OEC GROUP NEW YORK | : ADV NO. 13-0402 |
| DEFENDANTS | : |

OPINION IN SUPPORT OF
ORDER DATED JULY 25, 2013

This Opinion is filed pursuant to Local Bankruptcy Rule 8001-1(b) for the purpose of amplifying the Court's oral bench ruling and Order of July 22, 2013. That Order granted the Debtor's Complaint for Turnover.[1]

*Background*

On July 3, 2013, the Debtors commenced this proceeding under Chapter 11 of the Bankruptcy Code. The Debtors are in the business of purchasing furniture wholesale.

On July 12, 2013, the Defendant OEC filed a motion for relief from stay. OEC provides international transportation services for the Debtors. OEC's Motion stated that it

---

1 As this matter involves the administration of the estate, a demand for turnover of property of the estate, and a determination of the validity, extent, or priority of a lien, it is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(A), (E) and (K).

is a secured creditor with a possessory lien on goods; that as a secured creditor it is entitled to perfect its possessory liens per § 546(a) of the Bankruptcy Code; that such perfection is expressly excluded from the automatic stay; and that it was entitled to refuse to release goods it held unless and until its prepetition claims have been satisfied. Specifically, it contends that, as of the petition date, the Debtors owe it $1.45 million for various shipping charges; that of that total amount, $458,251 consists of charges relating to good presently in its possession; that the remaining $994,000 consists of prepetition charges which remain unpaid; and that OEC presently holds $1.9 million of the Debtors' goods. Because it asserts a prior secured interest in those goods pursuant to either a maritime lien or common carrier lien, OEC asks the Court for an order compelling the Debtors to pay OEC's pre- and postpetition claim or, alternatively, to allow OEC to liquidate the collateral.

On July 18, 2013, the Debtors filed a Complaint for Turnover, Injunctive Relief, and Damages. Therein, it argued that OEC did not have a maritime lien or common carrier lien on goods to secure prepetition debt. Alternatively, the Complaint argued that even if OEC had such a lien, (i.e., for prepetition debt), such lien could be avoided or was otherwise primed by the lien of the Debtors' lender, PNC Bank.

Also on July 18, Debtors filed a Motion for Expedited Hearing and to Compel Turnover or, in the alternative, for Injunctive Relief. As grounds for urgency, the Debtors asserted that it is in the wholesale furniture business; that its sales typically consist of full furniture sets; that the goods presently being held by OEC were needed to complete various furniture sets ordered by customers; that such furniture often cannot be obtained

elsewhere because various pieces are out of stock; and that unless the goods in question were released so that Debtors could complete pending orders, its customers would go elsewhere and the business will be lost forever. This, the Debtors urged, would doom its prospects for a reorganization.

On July 22, 2013, the Court heard testimony and oral argument on the parties' positions. At the conclusion of the evidence, the Court held in favor of the Debtors as to its demand for turnover and its plea for injunctive relief. It thereupon ordered the turnover of the goods sought by the Debtors. *See Saudi Basic Industries Corp. v. Exxon Corp.*, 364 F.3d 106, 112 n.6 (3d Cir. 2004) (citing four factors for injunctive relief: (1) finding the likelihood of irreparable harm, (2) the lack of an adequate legal remedy, (3) greater injury visited upon the Debtors were the relief not granted now, and (4) an implicated public interest) Specifically, the Court ordered the immediate delivery to the Debtor of the Current Goods (i.e., Goods in Transit as well as Landed Goods, defined *infra*) as well as an accounting thereof. The Debtors, however, were expressly required to pay OEC the regular freight charges on the Current Goods as well as documented demurrage and retention charges.

Given the exigent nature of the proceeding the Court could not more elaborately memorialize its findings and conclusion at the time. An appeal having been since taken, the Court takes this opportunity to more fully lay out the reasons behind its ruling that Debtors were entitled to the immediate release and delivery of the goods.

At the beginning of the hearing, it became apparent that this was solely a legal question. OEC did not dispute that the goods which it *has shipped* and *will ship* are

3

property of the bankruptcy estate. See 11 U.S.C. §541(a) (defining broadly property of the bankruptcy estate). The Debtors, in turn, did not dispute that OEC is a secured creditor as to those goods. Where they disagreed was on the extent of OEC's lien. Debtors maintain that OEC's liens are limited and breaks them down into three categories for purposes of its argument: Prepetition Goods, Landed Goods, and Goods in Transit. The Prepetition Goods represent goods which OEC shipped and released to the Debtors. Unpaid charges for these goods total about $1 million. Landed Goods represent goods which had shipped, arrived at port, were ready for delivery, but had not yet been released by OEC. As to the Landed Goods, the Debtors owe about $120,000 in freight charges and the goods have a value of about $650,000. Finally, Goods in Transit were goods which were en route but had not yet arrived. Debtors contend that OEC's liens extend to the charges due for the Landed Goods and for the Goods in Transit, but not beyond that. They contend that both the Landed Goods and Goods in Transit were being "held hostage" by OEC which was also demanding payment of the Prepetition Charges as a condition of releasing those goods. Debtors maintain that OEC had held only a possessory lien on the Prepetition Goods released to the Debtors but not yet paid for. schedOnce it released the Prepetition Goods without requiring payment, say the Debtors, OEC no longer had any lien on the released goods. OEC's maritime lien, say the Debtors, could not be extended to the Prepetition Goods. Further, to the extent that OEC claimed a <u>state law</u> lien on Prepetition Goods, such lien, say the Debtors, is unperfected and otherwise primed by the lender's purchase money security interest.

OEC, for its part, maintains that its maritime lien on the current goods extends

4

beyond current charged and operates to secure payment of prepetition debt because the parties agreed to extend it. OEC relies here on the bills of lading, invoices, and credit agreement between the parties. The terms of these documents, it says, grant it a general lien on all of the Debtors' property.

*Maritime Liens*

In the first instance, OEC asserts a maritime lien..As a general rule, ship-owners unquestionably, have a lien upon the cargo for the freight charges due thereon, and consequently may retain the goods after the arrival of the ship at the port of destination until the payment is made. *See The Bird of Paradise*, 72 U.S. 545, 554, 1866 WL 9421 (U.S.Cal.) It is settled law in the United States that a maritime lien can arise only by operation of law, regardless of any agreement between the parties. *See Newell v. Norton and Ship,* 70 U.S. 257, 262, 1865 WL 10771, at **4 (U.S.La.) ("Maritime liens are not established by the agreement of the parties.... They are consequences attached by law to certain contracts, and are independent of any agreement between the parties that such liens shall exist. They, too, are *stricti juris.*"); *Marine Oil Trading Ltd. v. M/T PAROS*, 287 F.Supp.2d 638, 644 (E.D.Va.2003) ("While a maritime lien does arise by operation of law rather than by agreement between the parties, there are a number of reasons for including contractual language alerting the parties to the existence of a lien on the ship. This language does not, however, actually give rise to the lien.")

OEC cites two admiralty cases for the proposition a maritime lien may be extended by agreement of the parties. OEC relies principally on *Bird of Paradise* for the proposition that while such a lien arises by operation of law, it may be extended or modified by the

5

parties. OEC's Brief, 5-6. It is "the settled rule in this court is, that law will uphold the agreement and support the lien." *Bird of Paradise, supra*, 72 U.S. at 555. OEC reads such language to authorize a lien for unpaid freight related to prior deliveries against <u>any</u> goods presently held. It next relies on *Gray v. Freights of the Kate*, 63 F. 707 (S.D.N.Y.1894). There, a lien was granted on all freights of a steamship line, including subsequently chartered vessels. After the steamship line went into receivership, claims were made against subsequent charters for prior unpaid freight charges. The receiver objected but the court enforced that lien as to future voyages of the same vessels. 63 F. at 714.

The Court was unpersuaded by either case. First, it does not read the language of *Bird of Paradise* so broadly. There, the High Court stated that the "[l]egal effect of such a lien is that the ship-owner, as carrier by water, may retain the goods until *the* freight is paid..." *Id.* at 555. It added that the lien "arises from the right of the ship-owner to retain the possession of the goods until *the* freight is paid, and is lost by an unconditional delivery to the consignee." *Id.* This Court places emphasis on the definite article ("the") preceding the word "freight." It reads those statements to limit the extent of a maritime lien to the freight charges for *those goods* on *that vessel* at *that time*. It does not share OEC's reading of the case to allow the parties to unconditionally extend the lien to unpaid freight for <u>prior cargo deliveries</u>. *See also Newell, supra*, 70 U.S. at 262 ("Indeed, the only power the contracting parties have respecting such liens as attach as consequences to certain contracts is, that the creditor may waive the lien, and may by express stipulation, or by his manner of dealing in certain cases, give credit exclusively to those who would also have been bound to him personally by the same contract which would have given rise to the

6

lien.")

The Court emphasizes that the *Bird of Paradise* Court <u>nowhere</u> explicitly states that a <u>maritime</u> lien may be extended by contract to secure goods already shipped and unconditionally released to an owner. To the contrary, the Court simply stated generally that a maritime lien could be extended by agreement of the parties. The example the Court used to illustrate its point dispels any inference that the Court meant that a lien which can only arise by operation of law, and which is to strictly construed, might by the stroke of a pen completely supplant the complementary nature of applicable maritime and non-maritime lien laws.

<u>Specifically</u>, the court in *Bird of Paradise* states that the parties:

> ... may agree that the goods, when the ship arrives at the port of destination, shall be deposited in the warehouse of the consignee or owner, and that the transfer and deposit shall not be regarded as the waiver of the lien; and where they so agree, the settled rule in this Court is, the law will uphold the agreement and support the lien. ...*id* @ 555.

Quite clearly (to this Court) the Court is saying that in releasing goods from a vessel to a warehouse a shipper's maritime lien can be preserved by agreement, where it would otherwise be lost. It is an untenably overbroad reading of the *Bird of Paradise* holding to interpret it as authority for the proposition that the freight charges for goods upon their release from a warehouse and entry into the hands of others in the ordinary course of commerce remain secured by a pre-existing <u>maritime</u> lien, which remains in effect until payment for earlier released shipments is made.

In short, and to reiterate, the Court reads the *Bird of Paradise* decision as limiting

7

the "extension" principle upon which OEC relies to the relevant freight charges attendant to the goods, the vessel and the shipment in question. If these charges are paid, any maritime lien as to those goods is extinguished. Indeed, were it otherwise, that is to say if OEC's position were correct, parties would never need recourse to the general lien laws of the several states. An agreement to extend the shipper's maritime lien to any unpaid debt would co-opt the field and suffice to render any further security arrangements wholly unnecessary. The many decisions which involve the interplay and operation of maritime and general state lien law in tandem militates against that conclusion, and explains why parties do routinely resort to state commercial laws as a means of providing further complementary security for delinquent freight charges. In this instance however, OEC's efforts in the latter regard were unavailing.

*General Lien*

In *Freights of the Kate*, the court noted that the general lien granted in that case would be subordinate to any superior rights of third parties. 63 F. at 713. While such a lien might apply to future voyages it would not against "subsequent bona fide purchasers or incumbrancers." 63 F. at 714. In this case, PNC Bank has a prior purchase money security interest in excess of $11 million on all of the Debtor's property. Hence, whatever general lien OEC may hold would be junior to that of PNC. *Id.*

OEC claims that it holds a general lien pursuant to its credit agreement, invoices, and bills of lading. The credit agreement gives OEC the right to exercise any and all rights of a secured party under the Uniform Commercial Code in effect in the State of New York. OEC refers specifically UCC § 7-307(1) which provides for a carrier lien on goods in its

8

possession:

> A carrier has a lien on the goods covered by a bill of lading for charges subsequent to the date of its receipt of the goods for storage or transportation (including demurrage and terminal charges) and for expenses necessary for preservation of the goods incident to their transportation or reasonably incurred in their sale pursuant to law. But against a purchaser for value of a negotiable bill of lading a carrier's lien is limited to charges stated in the bill or the applicable tariffs, or if no charges are stated then to a reasonable charge.

NY Uniform Commercial Code, § 7-307(1). From this point OEC proceeds to UCC § 9-333 which establishes relative lien priorities among secured creditors. Specifically, that provision states that "a possessory lien on goods has priority over a security interest in the goods unless the lien is created by a statute that expressly provides otherwise." It is based on this UCC section that OEC asserts a prior interest in the goods as to that of the Debtor's lender, PNC Bank. *See* OEC's Brief in Opposition, 15.

The Court disagrees with this conclusion. In order to be perfected, a carrier's lien requires possession of the goods. *See* UCC § 9-313 (stating that a secured party may perfect a security interest in ... goods... by taking possession of the collateral). As to the goods released prepetition and for which freight charges were not paid (to wit, the $ 1 million prepetition balance), OEC is not in possession. All it has in this regard is a security interest in the goods under its invoices, bills of lading, and credit agreement. Section 7-307(1) limits such a lien to "charges *subsequent* to the date of [the carrier's] receipt of the goods for storage or transportation..." The prepetition charges which OEC maintains are included in its lien *precede* the date OEC received the goods for transit. Like the language in *Bird of Paradise, supra*, the text of § 7-307(1) limits the lien to the cargo which

9

is in the carrier's possession at the time. The Court thus concludes that OEC's security interest is not perfected as against PNC Bank beyond freight charges for current goods. Accordingly, OEC's general lien may not be enforced against the Landed Goods or Goods in Transit to pay the prepetition claim.

*Summary*

OEC may assert neither a maritime lien nor a general lien against goods in its possession for unpaid prepetition freight charges. A maritime lien secures money lawfully owed for the carriage of that particular shipment. *Tienshan, Inc., v. Tianjin Hua Feng Transport Agency Co., Ltd.*, 2011 WL 7144007, at *17 (Mar. 9, 2011, F.M.C.) Disputes over earlier unrelated shipments cannot be used by either a carrier or a shipper as a justification for refusing to release the cargo or to pay lawful freight money. *Id.* quoting *Bernard & Weldcraft Welding Equip. v. Supertrans, Int'l, Inc.*, 29 S.R.R. 1348, 1356 n.14 (ALJ 2003) OEC's general lien likewise is unperfected and junior to the lien of the Debtor's lender, PNC Bank. The Debtors accordingly are entitled to turnover of the current goods upon payment of the charges incident thereto.

By the Court:

_____
Stephen Raslavich
United States Bankruptcy Judge

Dated: <u>August 14, 2013</u>

George Conway, Esquire
Office of the United States Trustee
833 Chestnut Street
Suite 500
Philadelphia PA 19106

David L. Braverman, Esquire
John E. Kaskey, Esquire
BRAVERMAN KASKEY, P.C.
One Liberty Place
1650 Market Street, 56th Floor
Philadelphia, PA 19103

Brendan Collins, Esquire
GKC Law, P.C.
Canal Square
1054 31st Street, NW
Suite 200
Washington, DC 20007-4492

Dean E. Weisgold, Esquire
Dean E. Weisgold P.C.
1835 Market Street
Suite 1215
Philadelphia, PA 19103

Nancy Mulvehill, Courtroom Deputy to Judge Raslavich

11